UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROSA R., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. C25-5034-BAT <br><br> **ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS** |

Plaintiff appeals the ALJ's decision finding her not disabled. She contends the ALJ erroneously discounted the opinion of examining psychiatric mental health nurse practitioner Jennifer Drake, A.R.N.P (hereinafter "NP Drake") and Plaintiff's statements about the severity of her carpal tunnel syndrome and mental impairments. Dkt. 9. The Court **REVERSES** the Commissioner's final decision and **REMANDS** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

In 2021, Plaintiff applied for benefits, alleging disability as of March 20, 2016. Tr. 15, 101. After conducting a July 2023 telephonic hearing, the ALJ and issued a December 2023 decision. Tr. 15–35, 41–100. The ALJ found Plaintiff meets the insured status requirements through December 31, 2023; has not engaged in substantial gainful activity since the alleged

1  onset date. Tr. 18; that migraines (with associated dizziness/vertigo); obesity; bipolar disorder; post-traumatic stress disorder ("PTSD"); generalized anxiety disorder ("GAD"); and major depressive disorder ("MDD") are severe impairments; these impairments do not meet or equal a listed impairment; Plaintiff retains the residual functional capacity ("RFC") to perform medium work with additional physical, postural, non-exertional limitations, including Plaintiff can understand, remember, and apply detailed but not complex instructions; she cannot work in fast-paced, production-type environments; and she may have occasional interactions with the general public. *Id.* The ALJ found Plaintiff cannot perform past relevant work as a retail store manager but can perform jobs that exist in significant numbers in the national economy, such as laundry laborer, hospital cleaner, and industrial cleaner. Tr. 33–34. The ALJ concluded Plaintiff has not been disabled from the alleged onset date of March 20, 2016, to the date of decision of December 28, 2023. Tr. 34. The Appeals Council denied review making the ALJ's decision the Commissioner's final decision. Tr. 1–6.

## DISCUSSION

**1. NP Drake**

Plaintiff contends the ALJ erroneously discounted NP Drake's opinion Plaintiff cannot sustain concentration and persist in work-related activity, maintain regular work attendance or complete work without interruption, and cannot interact with coworkers and superiors and the public or adapt to the usual stresses encountered in the workplace.[1] *See* Tr. 1411.

The ALJ considers the persuasiveness of medical opinions using five factors (supportability, consistency, relationship with claimant, specialization, and other); supportability

---

[1] Plaintiff does not contest the ALJ's decision to reject NP Drake's opinion that Plaintiff could perform complex tasks. Dkt. 9, at 3.

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 2

and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), (c) (2017). The ALJ's decision must explain how persuasive a medical opinion, or a prior administrative medical finding based on these two factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). An ALJ cannot reject a medical opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

The ALJ discounted NP Drake's opinion for four reasons. Tr. 32. First the ALJ rejected the opinion because NP Drake examined Plaintiff just once. NP Drake is a consultative or examining doctor. The opinion of an examining doctor is relevant evidence and is typically performed after one evaluation. There is thus no basis to reject the opinion simply because NP Drake examined Plaintiff once. If it were a valid basis, the ALJ's authority to order an examination under C.F.R. § 416.919(a) would be meaningless as the one-time examination the agency purchased under this regulation should be automatically deemed lacking any weight.

Second, the ALJ rejected the opinions on the grounds NP Drake relied upon Plaintiff's statements, which the ALJ discounted.[2] However, mental health evaluations will almost always involve the patient's self-report. As the Court of Appeals has stated:

> Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry.

---

[2] The Court does not presume, as Plaintiff implies, that the ALJ discounted NP Drake's opinion for failing to review Plaintiff's mental health treatment records, a prior psychological examination report, and Plaintiff's function report. Dkt. 9, at 9 (citing Tr. 1406). The ALJ did not imply that NP Drake failed to review what she said she reviewed. *See* Tr. 32.

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 3

*Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). "Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Id.*; *cf. Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)) (holding an ALJ may reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible"). Here, the ALJ rejected NP Drake's opinion without explication, on the grounds it relied upon Plaintiff's statement. There is no showing NP Drake felt Plaintiff was malingering or the NP was merely parroting Plaintiff's complaint without applying medical expertise to the assessment. The ALJ accordingly erred.

Third, the ALJ discounted the opinions on the grounds NP Drake's exam findings do not support the limitations assessed, i.e. the opinion lacks supportability. Tr. 32. The ALJ found NP Drake's opinion Plaintiff cannot sustain work activity or regular attendance are not supported by NP Drake's clinical findings Plaintiff can perform three-step commands and follow conversation generally. Tr. 32; *see* Tr. 1409–10. The ALJ discounted NP Drake's opinion Plaintiff cannot interact with coworkers and supervisors because Plaintiff "was alert, engaged, and cooperative," as well as "by her own notes that the [Plaintiff] said she continued to leave her home to go to the store and she spent time with her children." Tr. 32; *see* Tr. 1409–10.

Plaintiff argues the ALJ erred because NP Drake also observed Plaintiff was anxious, overwhelmed, frequently tearful, and distressed, and because the ability to do such minimal activities like going to the store and spending time with children do not contradict the assessed work restrictions. Dkt. 9, at 4–5.

The Court finds that the ALJ's rationale fails. The ALJ acknowledged but discounted Plaintiff's distressed presentation by finding the assessed limitations that flowed from this

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 4

evidence should be rejected because they are based upon Plaintiff's statements. However, Plaintiff's presentation cannot be equated with self-reports. That is, if the clinician observes an anxious or tearful person, or records rambling statements, those observations of a claimant's presentation are not the same as the claimant's self-reports. To the extent the ALJ discounted NP Drake's findings about Plaintiff's presentation as reliant on Plaintiff's statements, as noted above, in the context of a mental health evaluation, the evaluation will almost always involve reliance upon a claimant's statements and the ALJ errs by rejecting an opinion simply because it relied upon a claimant's statements. The Court accordingly finds the ALJ erred.

NP Drake indicated Plaintiff cannot sustain concentration and persist in work-related activity based upon her report of symptoms, isolating at home, interacting mostly with family, anxiety and being fearful in public, and Plaintiff cannot interact with coworkers and superiors and the public or adapt to usual workplace stressors based in part upon Plaintiff's statements and the NP's own observations that Plaintiff was tearful, distressed, anxious and overwhelmed during the examination.

The ALJ discounted these opinions noting NP Drake's mental status exam findings showed good cooperation, good effort, fair-minimal eye contact, fair-limited self-confidence, fair attention/concentration during the conversational part of the examination, good insight, and passing all of the memory and concentration tests. Tr. 32; *see* Tr. 1409–10. The ALJ's rationale is not linked to the bases of NP Drake's assessment. The NP did not opine Plaintiff has work limitations because she was not alert enough, uncooperative, lacks no ability to concentrate, or has memory problems.

Rather the mental status examination administered by NP Drake showed Plaintiff was limited in self-confidence; had rapid, pressured, rambling speech; anxiety, depression, low

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 5

1   energy; tangential thought process that was fair but led to rambling explanations, and had
2   concentration issues "at times." Tr. 1409. NP Drake's opinions about Plaintiff's functioning thus
3   rest upon Plaintiff's statements and the NP's clinical assessment Plaintiff has the cognitive
4   ability to perform work activity but her ability to work is limited by the inability to <u>sustain</u> pace
5   and persist in the work place on a daily or weekly basis; her fear and anxiety about being in
6   public and her reactions to noise as a result of the murder of her son in 2022; and her limited
7   ability to interact with coworkers or the public based upon how she "interacted with the
8   examiner in an anxious and overwhelmed manner." The ALJ accordingly erred in concluding NP
9   Drake's examination findings do not support the NP's opinions about Plaintiff's limitations.

10         Fourth, the ALJ discounted NP Drake's assessed limitations as inconsistent with the other
11  evidence. Tr. 32. The ALJ found NP Drake's opinion Plaintiff cannot sustain work activity was
12  inconsistent with other evidence in the record that showed Plaintiff was alert, engaged, and
13  cooperative throughout mental and physical exams. Tr. 32 (citing Tr. 1094–1397, 1413–62,
14  1582–1612). It is worth repeating NP Drake opined Plaintiff can manage funds due to adequate
15  cognitive test result and could perform both simple and complex instructions. These opinions are
16  thus consistent with the record showing Plaintiff's cooperation and engagement in her mental
17  examinations. However, the ALJ erred as these records do not show Plaintiff can *sustain* work
18  activity she would be required to perform in a normal workday and week, or that she can work
19  with the public.

20         The ALJ also found NP Drake's opinion Plaintiff cannot interact with coworkers and
21  supervisors was inconsistent with other evidence showing Plaintiff's ability engage appropriately
22  and communicate clearly throughout the record. Tr. 32 (citing Tr. 731–866, 1106–1397, 1413–
23  62). The ALJ erred because NP Drake did not opine Plaintiff cannot or engage appropriately

with others, at least individually and for limited periods of time. Indeed, NP Drake found Plaintiff was cooperative and made good effort, thus indicating Plaintiff could interact with others, at least in the context of medical appointments. But as noted above the NP opined Plaintiff's ability to interact with others in the public was limited due to anxiety, PTSD type symptoms and depression that made her fearful of being in public and thus Plaintiff was limited in the ability to sustain work activity work with others.

To be sure, Plaintiff herself has acknowledged she gets along with her family and friends who are supportive of her recovery; she is okay with neighbors and the police; one or twice a month she socializes with friends; and she goes doctor's appointments. But it would be unreasonable to find these activities establish Plaintiff can perform sustained gainful work activity with occasional interaction with the public as the ALJ found in determining RFC.

The Court also notes NP Drake did not opine Plaintiff could not function at all, had no friends and did not socialize, and could not shop or go to doctor's appointments. Hence, Plaintiff's activities do not contradict NP Drake's opinions regarding the impact of Plaintiff's mental health conditions on her ability to perform sustained gainful work activity and limitations in working in the public.

The Court further finds the "mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citations omitted); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted) ("disability claimants should not be penalized for attempting

to lead normal lives in the face of their limitations"). Hence, there is nothing inherent in Plaintiff's activities that contradict NP Drake's opinions.[3]

In sum, the Court finds ALJ erred in discounting NP Drake's opinion. This error is harmful as it resulted in an RFC determination that failed to account for all the limitations assessed by NP Drake.

**2. Plaintiff's Testimony About Carpel Tunnel Syndrome and Mental Impairments**

Plaintiff also contends the ALJ failed to provide specific, clear and convincing reasons to discount testimony about symptoms caused by carpal tunnel syndrome ("CTS") and mental impairments. *See Molina*, 674 F.3d at 1112.

The ALJ discounted Plaintiff's testimony as inconsistent with her activities during the relevant period, including working for several years after the alleged disability onset date. Tr. 23–24. An ALJ may discount a claimant's statements if they conflict with her activities. *Molina*, 674 F.3d at 1113. An ALJ can consider any work activity, including part-time work, in determining whether a claimant is disabled. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). Plaintiff worked continuously from 2017 through 2019 as a caregiver for her niece seven hours per day, four days per week, as she stated in her work activity reports. Tr. 281–82, 302. This activity involved caring for two children for ten hours, which meant making lunch and sometimes dinner, reminding the children to take showers, and sometimes helping with

---

[3] The Court notes Plaintiff claims the ALJ should not have relied upon evidence developed before she witnessed her son's murder in February 2022. In weighing NP Drake's opinions, the ALJ did not specifically address whether evidence from the time-period before or after February 2022 made any difference, and thus the Court declines to, *ab initio*, on appeal address or resolve this claim.

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 8

homework.[4] Tr. 321. In 2021 and 2022, Plaintiff reported taking care of household pets, and household chores like washing dishes or doing laundry. Tr. 24 (citing Tr. 304–18, 341–48). Plaintiff does not meaningfully challenge the ALJ's decision to discount her statements because she worked during the period of disability. *See* Dkt. 9, at 9–15. The ALJ's determination to discount Plaintiff's symptom testimony about her ability to work for the time-period between the onset date in 2016 and August 2019 is thus well supported. However, the ALJ's rationale fails after 2019 because the ALJ noted Plaintiff stopped caring for her nieces in 2019, and that there was a diminution in her activities, such as limitation in the ability to prepare meals. Tr. 23-24.

Hence, the Court affirms the ALJ's determination to discount Plaintiff's testimony limited to the time-period between the onset date in 2016 and August 2019. However, Plaintiff's caregiving activity ended in 2019, and thus the ALJ should reassess Plaintiff's testimony regarding her mental health from August 2019 onward.

As to her mental health testimony, Plaintiff argues "[i]t was unreasonable [for the ALJ] to rely on activities and observations from before February 2022 to reject statements about Plaintiff's condition after this date." Plaintiff applied for disability alleging an onset date of March 2016 through her date last insured in 2023. To adjudicate Plaintiff's disability application and evaluate her testimony, the ALJ reasonably considered evidence from the entire period of alleged disability. Having considered the evidence from the entire period of alleged disability, the ALJ properly rejected Plaintiff's testimony for the time-period between 2016 and 2022. Plaintiff implicitly concedes the ALJ correctly assessed this time period in only arguing the evidence developed before 2022 is not grounds to discount statements made <u>after</u> 2022.

---

[4] Plaintiff has described her caretaker role in various ways. In May 2021, she described taking care of her niece for seven hours a day. Tr. 281–82. In August 2021, she described taking care of two children for ten-hour days. Tr. 321.

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 9

However, the Court finds the ALJ must reassess Plaintiff's mental health testimony as to the period after February 2022. As noted above, the ALJ erred in discounting NP Drake's July 2022 evaluation and opinions, which included Plaintiff's PTSD symptoms such as noise sensitivity and fear of being in public. Ostensibly, some of the symptoms and limitations assessed by NP Drake were a product of the February 2022 death of her son. The evidence contained in the records which predate February 2022 would not have included the mental health consequences of Plaintiff's son's death, and the Court finds Plaintiff's testimony about the severity of her mental health symptoms from February 2022 onward must accordingly be reassessed on remand.

Plaintiff also argues the ALJ harmfully erred by failing to find her CTS is a severe impairment at step two and by failing to account for its resulting limitations. Dkt. 9, at 10–12. At step two, Plaintiff had the burden to show she has a severe impairment by providing medical evidence. 20 C.F.R. §§ 404.1512, 416.912. An impairment or combination of impairments is "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original) (citation omitted). An ALJ is required to consider the combined effect of all of a claimant's impairments on her ability to function. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). If an ALJ determines, as here, a claimant has any severe impairment at step two, the sequential analysis proceeds and the ALJ must continue to consider all of the claimant's limitations, severe or not. Social Security Rule ("SSR") 96-8p, *available at* 1996 WL 374184; *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). When an ALJ fails to identify a severe impairment at step two, but nonetheless considers at subsequent steps each

claimed impairment, including the erroneously omitted severe impairment, the error at step two is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ first cited substantial evidence establishing Plaintiff's CTS demonstrated only a slight abnormality that caused no more than a minimal effect on her ability to work. Although at a February 2023 exam, CTS testing was positive, cubital testing was negative; x-ray studies of the right wrist were unremarkable; Plaintiff was referred for a neurodiagnostic study, but no results were received; the diagnosis itself was not well-established absent diagnostic testing given the intermittent nature of the signs on examination; and Plaintiff was treated with a night brace and there was no evidence of ongoing signs, symptoms, or treatment for the condition lasting or expected to last for twelve months in duration. Tr. 19 (citing Tr. 1463–65).

Second, although the ALJ did not find CTS was severe, the ALJ in determining RFC nonetheless considered Plaintiff's complaints of hand pain and difficulty with heavy lifting, i.e. her CTS symptoms. Tr. 28 (citing Tr. 1463–65, 1582–1612). In consideration of these complaints, the ALJ limited Plaintiff to medium work with only occasional climbing of ladders/ropes/scaffolds. Tr. 28. Thus, any error the ALJ committed by failing to identify carpal tunnel syndrome as a severe impairment was rendered harmless because the ALJ went on to consider limitations related to CTS such as hand difficulty. The ALJ cited specific, clear and convincing reasons for discounting Plaintiff's testimony about the severity of the limitations derived from CTS and any related hand and wrist pain. The Court accordingly affirms the ALJ's treatment of Plaintiff's CTS.

## CONCLUSION

For the foregoing reasons, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the case for further administrative proceedings under sentence four of 42 U.S.C.

1  § 405 (g). On remand, the ALJ shall reassess the opinion of NP Drake and the testimony of

2  Plaintiff limited to her mental health symptoms from February 2022 onward (the Court affirms

3  the ALJ's assessment of Plaintiff's CTS testimony); develop the record and redetermine RFC as

4  needed; and proceed to the remaining steps of the disability evaluation process as appropriate.

5        DATED this 30th day of June, 2025.

                                                BRIAN A. TSUCHIDA
                                                United States Magistrate Judge

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 12